| | |
|---|---|
| ANITA THOMAS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CUMBERLAND COUNTY BOARD ) | |
| OF EDUCATION and VANSTORY ) | |
| ELEMENTARY SCHOOL ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court upon the parties' Motions for Summary Judgment (DEs 112, 122). The Motions have been fully briefed and are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Summary (DE 122) be DENIED, that Defendants' Motion for Summary Judgment (DE 112) be GRANTED.

## I. BACKGROUND

Plaintiff was formerly employed as a teaching assistant ("TA") at Vanstory Hills Elementary School. Vanstory is within the control of the Cumerberland County Board of Education ("CCBOE"). During the times relevant to the instant action, Betty Musselwhite was principal at Vanstory.

From 2005 to 2009, Plaintiff served in successive one-year positions at Vanstory. Each TA is apprised of the fact that the position to which they are appointed is for one year, with no guarantee of reemployment the following year. To that end, each TA signs an expiring employment agreement at the beginning of each school year which states the fact that the employment is for one year.

Each year of her employment at Vanstory, Plaintiff worked in different classrooms. During the 2008–09 school year, Plaintiff was a TA for third-grade teachers Lynn Glass and Karen Koonce. As all TAS are evaluated at the end of each school year, Glass and Koonce independently completed performance evaluations for Plaintiff in the spring of 2009. This was done with new evaluation forms that had not been used previously. Plaintiff's reviews were not entirely favorable, and noted that she missed 28 days of work. In addition to attendance issues, both Glass and Koonce found Plaintiff was "below standard" with respect to performing her job responsibilities with accuracy and acceptability; using her time widely; demonstrating a commitment to personal/professional growth; working independently; and assuming responsibility for making decisions within the limits of her authority. (Doc. 116-7; 116-8). Additionally, Glass found Plaintiff below standard in reporting to work on time and conforming to work hours. In all other categories, Plaintiff's performance was rated at standard level.

Given uncertainty about available funding for TAS for the upcoming school year, Musselwhite contacted all TAS, including Plaintiff. On July 16, 2009, she left a message on Plaintiff's phone advising her of the uncertainty of the funding to be allocated for TAS

and that the school was unlikely to get TAS for grades beyond second grade. The message further stated that the County was starting a list of TAS "so that other schools that needed [TAS for] kindergarten and first grade . . . would go the that list before they hired from applications." (DE 96-3). If fact, Vanstory hired only 13 of the 20 TAS for the 2009–10 school year. Plaintiff concedes that the TAS who were hired back for 2009–10 school year all had better performance evaluations than she did.

In December, 2008, Plaintiff filed a intake questionnaire with the EEOC and thereafter filed a charge of discrimination on February 23, 2009. The present action brings one claim of retaliation against the Defendants.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in a light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. To withstand a motion for summary judgment, the non-moving party may not rest on the allegations, *Anderson*, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted & emphasis removed); *see also Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)

3

("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." (internal quotation marks omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Because Plaintiff is proceeding pro se, the Court should construe her claims liberally. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). Nevertheless, the Court must be cautious not to transform the special care with which it views pro se filings into advocacy on Plaintiff's behalf. *Id.*

### B. McDonell Douglas framework

Plaintiff brings her claim for retaliation under Title VII, which prohibits employers from failing or refusing to hire or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a claim of retaliation in one of two ways. First, the plaintiff may present direct or indirect evidence of the discriminatory or retaliatory animus alleged. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). To this end, the plaintiff must forecast "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995). If such evidence is not available to the plaintiff, he may rely on the burden-shifting scheme as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny.

4

This scheme requires the plaintiff to establish a *prima facie* case of discriminatory action, which gives rise to a presumption of discrimination. *Id*. at 802. To establish a *prima facie* case of retaliation, a plaintiff must prove by a preponderance of the evidence that (1) she engaged in a protected activity; (2) she suffered adverse employment action; and (3) a causal link between the protected activity and adverse employment action. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Hill*, 354 F.3d at 285 (4th Cir. 2004). Upon making such a showing, the burden shifts back to the plaintiff to demonstrate that the defendant's articulated reasons are a pretextual. *Id*.

## III. DISCUSSION

### A. Prima facie case of retaliation

As noted above, Plaintiff must establish a prima facie case of retaliation by showing three elements: (1) she engaged in protected activity, (2) she suffered an adverse employment action at the hands of her employer; and (3) the employer took the adverse action because of the protected activity. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001). For purposes of the present motion, the parties do not dispute that the first factor has been established—Plaintiff engaged in protected activity when she assisted a coworker in filing a charge of discrimination and, again, when Plaintiff filed her own EEOC charge.

### *(1) Adverse action*

An employment action is adverse in the context of a retaliation claim if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted). The anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67. Whether an action is materially adverse must be determined by examining all the circumstances. *Id.* at 68, 71.

As to the second element, Defendants concede that the nonrenewal of her contract is sufficient to constitute an adverse action. Defendants maintain, however, that the negative performance evaluation did not exclude her from consideration for future employment, and is not, therefore, an adverse action for purposes of a retaliation claim. Indeed, Plaintiff has not put forth evidence of other consequences attendant to the unfavorable reviews to render them sufficiently adverse such that a reasonable person would be dissuaded from making a charge of discrimination. *See Parsons v. Wynne*, 221 F. App'x 197 (4th Cir. 2007) (holding that negative performance evaluation alone would not dissuade a reasonable worker from pursuing a retaliation claim); *Altman v. McHugh,* No. 5:11-CV–0061, 2012 WL 1190271 (W.D. Va. April 9, 2012) (finding plaintiff's allegation of a single wrongful performance evaluation, without any accompanying retaliatory acts or negative employment consequences, is insufficient to establish a prima facie case for retaliation because it is not materially adverse). Thus, the negative

6

performance evaluations are insufficiently adverse to meet the second element of a prima facie case of retaliation.

All other alleged adverse actions alleged by Plaintiff, *to wit.*, that she was locked out of the classroom at the end of the day, making her late to pick up her child; that she was assigned janitorial duties; and that she was could not attend assemblies due to her workload, are merely petty annoyances and thus insufficient to satisfy the second prong of a prima facie case. "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient to support a claim of retaliation. *Burlington N. & Santa Fe Ry.*, 126 S.Ct. at 2415; *see also Spriggs v. Senior Services of Southeastern Virginia*, No. 2:1-CV-182, 2012 WL 1940761, at *10 (E.D. Va. May 29, 2012) (noting plaintiff's complaints that she was not provided moving assistance and that she felt unsupported in her position fall into the category of workplace annoyances, inconveniences, and snubs). Thus, the failure to rehire Plaintiff, but not the other alleged adverse actions, satisfies the second element of a retaliation claim.

*(2) Causal connection*

As to the third element, the parties dispute whether there is a causal connection between the Plaintiff's filing, or assistance in filing, the charges of discrimination with the EEOC and the nonrenewal of her contract. In order to establish a causal connection, a plaintiff must show the employer terminated him "*because* [he] engaged in a protected activity." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)(quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)

7

(emphasis in original)). Thus, a plaintiff must show that "but for" the protected activity the plaintiff engaged in, the employer would not have taken the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ––– U.S. ––––, ––––, 133 S.Ct. 2517, 2523, ––– L.Ed.2d ––––, ––– (2013).

"[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). However, the passage of time alone generally cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (internal quotation marks omitted). "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe, supra*. Although there is no "bright temporal line," the Court of Appeals for the Fourth Circuit has held that a period of three to four months between the protected activity and the adverse employment action is too long to establish causation by temporal proximity alone. *See Perry v. Kappos*, No. 11–1476, 2012 WL 2130908, at *6 (4th Cir. June 13, 2012) (citing *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006)).

Here, Plaintiff alleges she provided information to LaDonna Daniels in 2008 to assist Daniels in filing her June 25, 2008 charge of discrimination with the EEOC.

8

Plaintiff filed her own EEOC charge on February 23, 2009.[1] Her contract was not renewed in or around July 16, 2009. This four to five month period is too long to alone establish a causal connection. *See Perry, supra.*

However, "[i]n cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v, Equant, Inc.,* 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (internal quotation omitted)); *accord Conner v. Schnuck Mkts.*, 121 F.3d 1390, 1395 (10th Cir. 1995). Such cases tend to involve regular acts demonstrating animus or antagonism, coupled with valid reasons why the adverse action was not taken immediately. *Hart v. Hanover County School Bd.*, No. 3:10-CV-794, 2013 WL 1867388, at *5 (E.D. Va. May 2, 2013).

Plaintiff contends that once she filed her charge with the EEOC, she suffered harassment. The instances she cited include: teachers began rolling their eyes at her, giving her extra work and speaking to her in a condescending manner; she was told to mop up milk, which was a duty of the custodial staff; Musselwhite's secretary told her, condescendingly, about a job opening in another school; items were being left in her cubby; she was locked out of school and informed she would have to wait a few weeks for a new key; on many occasions, she was locked out of her classroom at the end of the

---

[1] Plaintiff first filed the EEOC Intake Questionaire on December 15, 2008. A Notice of Charge was sent to Vanstory on January 15, 2009. See DEs 97-4; 112-4, p. 35–36.

day, making her late to pick up her son at school; and she was not allowed to attend school assemblies. (DE 120, p. 9–11).

The mere fact that a plaintiff has filed an EEOC complaint does not, in and of itself, create a reasonable inference that everything that happened after that point, which plaintiff did not like, was caused by the fact that he had filed his complaint. *Chappell v. School Bd. of City of Virginia Beach*, 12 F. Supp. 2d 509, 517 (E.D. Va. 1998). However, as the burden at this stage is minimal, Plaintiff has stated a pattern of antagonism sufficient to establish a causal connection between her protected activity and the adverse employment action. *See Ainsworth v. Loudon County School Bd.*, 851 F. Supp. 2d 977 (E.D. Va. 2012).

### B. Legitimate, non-discriminatory reason

Inasmuch as Plaintiff has stated a prima facie case for retaliation, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for its actions. "This burden [of articulating a non-discriminatory reason] is a burden of production, not persuasion." *Holland*, 487 F.3d at 214. "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95 (1981).

Defendants state that the contracts for teaching assistant are year-to-year. This is because there are times, as in the present case, when CCBOE receives less funding for such positions. In such instances, Defendants state that the decision of which teaching assistants are hired back is based on performance, not seniority. Plaintiff's contract was

10

expired at the end of the 2008–09 school year. Plaintiff received unfavorable performance reviews at the end of the 2008–09 school year from Glass and Koonce, who cited Plaintiff's lack of initiative, her failure to notify them of her absences and mistakes with her work. The fewer teaching assistant positions being funded, coupled with Plaintiff's poor performance evaluations, resulted in defendants not offering her a position for 2009–10.

Defendants' proffered reason is a legitimate, non-retaliatory reason sufficient to rebut any prima facie inference of retaliation. *See Robinson v. Affinia Group, Inc.*, 815 F. Supp. 2d 935, 943 (W.D.N.C. 2011) ("Defendant's burden is low such that it need not persuade the court that it was actually motivated by the proffered reasons so long as it otherwise articulates a legitimate reason that is supported by the evidence") (quoting *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089) (internal quotations omitted). Thus, the burden returns to Plaintiff to prove that the articulated reasons are pretextual.

**C. Pretext**

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reasons were, in fact, unlawful. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This requires Plaintiff to prove first that the proffered reason is false, and second, that the alleged form of discrimination was the real reason. *See Holland*, 487 F.3d at 218 (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)). "[R]ejection of the employer's legitimate, nondiscriminatory reason . . . does

11

not *compel* judgment for the plaintiff." *Reeves*, 530 U.S. at 146 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original)). "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's [alleged] reason is correct." *Id.* at 146–47 (internal quotation marks omitted). A plaintiff "must first undercut or invalidate the employer's stated reasons and also establish through evidence or through an inference that the improper discriminatory motivation was the real reason." *Ramos v. Molina Healthcare, Inc.*, No.1:12-CV-856, 2013 WL 4053227, at *11 (E.D. Va. Aug. 8, 2013).

Plaintiff offers the following examples of why Defendant's proffered reasons are not credible: Defendants misstated the number of sick days she used; they failed to follow CCBOE's own seniority policy when extending contracts to teaching assistants in the 2009–10 school year; and they contradicted themselves by first asserting that Plaintiff was not rehired due to budgetary reasons but later stating that her poor performance reviews were the basis of their decision.

     *(1) Absences*

Plaintiff contends that the Defendants have misstated the number of days she was absent, asserting she missed only 13.6 days. In her affidavit, Musselwhite stated Plaintiff missed 28 days. Plaintiff's pay stub for the end of the 2008–09 school year reflects that she used 13.6 days of sick leave and 11.2 days of annual leave, for a total of 24.8 days of

12

absence. (DE 120-12). While Plaintiff references only sick days, taking into account her annual days as well reflects that her total absences were 24 days Defendants acknowledge that the number is 24.8, not 28 days as cited by Musselwhite, but that in any event, the number is still high. Accordingly, this argument is without merit.

*(2) Seniority*

Plaintiff also argues that the Defendants failed to follow their own seniority policy, which resulted in TAS with less seniority than Plaintiff being hired for the 2009–10 school year. Hiring back only 13 TAS for the 2009–10 school year of the 20 TAS it had for the previous school year, Defendants assert that the basis for determining who was extended an offer was based on performance, not seniority, and that no seniority policy was implicated. She contends that the CCBOE's policy states: "Seniority shall be a consideration and verified by Human Resources." (DE 116-14). Defendant contend that this language is taken from a grievance policy, not a hiring practices policy. Additionally, Musselwhite has stated that no seniority policy was effective as to TAS at the time in question. (DE. 123-1 ¶ 8). Inasmuch as no policy was in place mandating that seniority be considered when determining which TAS were extended contracts in 2009–10, no policy violation has been stated. Accordingly, this argument fails to demonstrate pretext.

*(3) Proffered reason for termination*

As to the alleged inconsistency in the proffered reason for her termination, Plaintiff has provides a transcribed phone message left for her by Musselwhite. The transcript clearly states that there was the potential not to rehire teaching assistants due to

13

budgetary reasons. Plaintiff alleges this is inconsistent with the Defendants' proffered reasons that she was not rehired based on poor performance reviews. However, Defendants concede that the lower budget allocations for teaching assistants reduced the number of teaching assistants offered a position in the 2009–10 school year. Plaintiff does not dispute the fact that fewer TAS were hired back for 2009–10. Based on her evaluations, Plaintiff was not one of those offered a position. As noted above, the defendants maintain that the hire-back decisions were based on performance. This is not an inconsistency on the part of the Defendants and cannot, therefore, establish pretext.

Having failed to establish that the Defendants' reasons for not renewing her contract was pretextual, Plaintiff has failed to meet her burden at this stage of the *McDonnell Douglas* analysis. As such, judgment in favor of the Defendants is warranted.

**IV. CONCLUSION**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment (DE 122) be DENIED, that Defendants' Motion for Summary Judgment (DE 112) be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on August 28, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE